UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WILLIAM C. BROWN,

    Plaintiff,

v.                                                       CASE NO: 8:07-cv-1599-T-26TGW

PROGRESS ENERGY,

    Defendant.
_____/

**O R D E R**

Before the Court are Defendant's Motion for Summary Judgment, affidavit, depositions and exhibits (Dkts. 25-28), Plaintiff's Response in Opposition and attachments (Dkts. 41-43), Plaintiff's Motion for Summary Judgment and affidavit (Dkts. 29 & 30), and Defendant's Memorandum in Opposition, Statement of Disputed Facts, and affidavits. (Dkts. 36-40.) After careful consideration of the submissions of the parties and the entire file, the Court concludes that Plaintiff's motion should be denied and Defendant's motion should be granted.

**Background**

Plaintiff, William C. Brown, began working for Defendant, Progress Energy, on March 11, 2002, as a Lineman Apprentice at the Tarpon Springs Operation Center. He transferred in June 2006 to the Seven Springs Line Department, and by October 2006,

Plaintiff had completed his training and was promoted to the position of Lineman. Plaintiff filed a claim with the EEOC after an incident on November 18, 2006, in which he claims that he was racially harassed by his former crew of Tarpon Springs. In 2007, Plaintiff transferred again, this time to a Distribution Travel Crew based out of Tarpon Springs, where Plaintiff remains employed by Defendant.

**Pertinent Facts**

Both parties seek summary judgment in this action brought pursuant to 42 U.S.C. § 1981 which seeks relief for subjection to a racially hostile work environment and denial of training. The facts must be taken in the light most favorable to the non-moving party on each of the motions. The following events transpired during the approximately four-year period Plaintiff spent as a lineman apprentice in training for the position of lineman, which he attained in October 2006.

Plaintiff was the sole African-American lineman apprentice out of five apprentices and five linemen at the Tarpon Springs center. Plaintiff claims that he was singled out and denied the necessary training to become a lineman. Specifically, Plaintiff claims that Bret Savage,[1] the senior lineman, and Paul Montenare, a lineman, denied him the opportunity to train in the hydraulic bucket as many times as his fellow non-black

---

[1] Plaintiff claims that Bret Savage was in charge of training the apprentice linemen.

apprentices.[2] Savage and Montenare required him to dig ditches and holes, and did not require his fellow non-black apprentices to dig, but required them to watch Plaintiff work.[3] Plaintiff also claims that he was denied the use of the newer white bucket trucks to permit less senior white apprentices to use the newer trucks.[4] Finally, Plaintiff claims that Robert Langille, a fellow apprentice lineman, and Martin Rivera, another fellow apprentice lineman, overheard Savage call Plaintiff a "nigger" on several occasions, and James Jankowski, a co-worker, once heard Savage exclaim that he planned to "get that nigger [Plaintiff] fired." John Hadfield, a lineman, joked with Plaintiff about eating chicken for lunch, referring to African-Americans liking chicken.[5]

Plaintiff claims that after he complained to Jeff Harris, Plaintiff's supervisor, about the racial slurs, the linemen stopped training him. Harris told Plaintiff to try to get along with Savage. Plaintiff claims he complained to Harris numerous times about his treatment by Savage and Montenare, but Harris always told him to work it out.

---

[2] Plaintiff claims that his fellow apprentice linemen told him that he received less bucket time because of his race—that he was black. The fellow apprentices were Robert Languille, James Jankowski, Wayne Barrett, Jim Foseck and Dan Hagen.

[3] Plaintiff claims that Jankowski, Langille and Barrett, all fellow apprentice linemen, told Plaintiff that Savage and Montenare were being hard on Plaintiff because he was black.

[4] Plaintiff complained to the Union about this incident; however, the Union did not process his grievance. Plaintiff claims that Marshall Harper, another apprentice lineman, told him to stop complaining about not receiving a white truck because he was drawing negative attention to the crew.

[5] Plaintiff also adds that Savage and Hatfield referred to Mexicans as "sweatbacks."

Plaintiff received satisfactory performance reviews throughout his employment with Defendant. An incident occurred on November 18, 2006, after he had moved to Seven Springs, but before he became a lineman. He learned that his old Tarpon Springs crew headed by Savage would be coming to Seven Springs to assist with a big job. Plaintiff told his fellow crew workers that the Tarpon Springs crew would give him a hard time because he was black. When Savage arrived, Plaintiff claims he started quizzing him about work. Later that day, Savage accused Plaintiff of a safety violation, not wearing gloves while up in a bucket next to a power line pole. After Savage reported Plaintiff and an investigation was conducted, Plaintiff was given a written reprimand and lost one day's pay. On that same day, Plaintiff called the ethics line to report racial harassment by Savage, but the investigation found no harassment. Thereafter, Plaintiff filed a claim with the EEOC and this action ensued.

## Plaintiff's Motion

*Failure to Train*

To establish that Defendant failed to train Plaintiff, Plaintiff must show that he is a member of a protected class, that he was entitled to or qualified for the job, that he suffered an adverse employment action, and that he was treated less favorably than similarly situated employees who are not members of his protected class. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1331 (11th Cir. 1998); Williams v. Health Maint. Org. of Fla., 689 F.Supp. 1082, 1089 (M.D. Fla. 1988). Despite Plaintiff's

claim that he was denied training, there is no assertion or evidence that he did not receive a timely promotion to the position of lineman and, therefore, Plaintiff cannot show that he suffered any adverse employment action. There is no indication that the failure to work as often in the bucket as other apprentice linemen resulted in any negative action. On the contrary, he was promoted to lineman after four years and seven months when it takes some apprentice linemen as long as eight or nine years to qualify. Plaintiff qualified for the position of lineman before all but one of the non-black apprentice linemen. Plaintiff's own deposition testimony reveals that the apprentice lineman who was promoted before him had started to work for Defendant prior to Plaintiff.

With respect to his claim that he was not treated as favorably as other non-black employees, Plaintiff admitted that three of his fellow apprentice linemen had less experience than he and therefore were not similarly situated to Plaintiff in all respects. Even assuming Plaintiff could establish a prima facie case of disparate treatment, Defendant has articulated a legitimate, non-discriminatory reason for limiting his time in the bucket. Plaintiff's seniority among the apprentice linemen made it necessary to permit other apprentices time in the hydraulic bucket. According to Savage and Montenare, they never refused training to Plaintiff on the basis of race. They gave him satisfactory performance reviews and he was promoted to lineman. If Plaintiff received less training at Tarpon Springs, the reason was due to his seniority and experience compared to the other apprentice linemen.

*Hostile Work Environment*

Based on the same facts, Plaintiff seeks relief for a hostile work environment. To establish a racially hostile work environment under section 1981, the plaintiff must show that he belongs to a protected class, that he was subjected to unwelcome harassment, that the harassment was based on a protected characteristic of the employee, i.e., race, that the harassment was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," and that his employer is liable. Harrington v. Disney Regional Entm't, Inc., 2007 WL 3036873, at *11 (11th Cir. Oct. 19, 2007); Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002). The "severe and pervasive" requirement possesses both objective and subjective components. Harrington, at *11 (citing Faragher v. City of Boca Raton, 524 U.S. 775, 787, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)). The employee must subjectively perceive the severity of the harassment and the perception must be objectively reasonable. Id. Four factors may be considered to analyze the severity: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is humiliating or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance. McCann v. Tillman, 526 F.3d 1370, 1379 (11th Cir. 2008); Harrington, at *11 (citing Gupta v. Florida Bd. of Regents, 212 F.3d 571, 584 (11th Cir. 2000)).

Plaintiff admitted that apprentice linemen were occasionally denied hydraulic bucket training when they requested it, and certainly any denial of training did not prevent him from being promoted to a lineman. With respect to digging trenches, Plaintiff admits that even non-black linemen, including Savage, Montenare, and Hadfield

dug trenches also.  In any event, Savage and Montenare deny that they refused training or required Plaintiff to dig additional holes and trenches.  Plaintiff also admitted that Mike Poole distributed the newer white bucket trucks to his "good friends" and "fishing buddies."  Such method of favoritism does not run afoul of anti-discrimination laws because it is not related to a plaintiff's membership in a protected class.  See, e.g., Platner v. Cash & Thomas Contractors, Inc., 908 F.2d 902, 905 (11th Cir. 1990) (holding that "favoritism" towards friends and relatives is not a per se violation of Title VII); Blanton v. Bunch & Assocs., Inc., No. 8:04-cv-1057-T-27MAP, 2006 WL 269981, at *10 (M.D. Fla. Feb. 3, 2006) (holding that "favoritism" unrelated to plaintiff's protected class does not constitute discrimination).  Finally, the incident on November 18th in which Savage reported Plaintiff for a safety violation for not wearing gloves, was not, on its face, based on race.

As to the frequency of the conduct, the submissions show that a few incidents occurred over a nearly five-year period.  Although the racial epithets were offensive, such conduct, which is denied on the part of Defendant, did not rise to the level of severity needed to create a hostile work environment.  Plaintiff suffered no difficulties in performing his job duties, and, in fact, was promoted to a lineman position in the expected amount of time.  Moreover, the comments made were not made by his supervisor, Harris, but were made by his co-workers.  The issue then becomes whether Defendant was made aware of the situation, sufficient to know of the majority of the alleged conduct.  There is no question that while Plaintiff may have reported the denial of

hydraulic bucket training and the fact that he never was given a new white bucket truck to operate, the racial slurs were never reported. Plaintiff's complaint to the ethics line about Savage's quizzing on November 18th, was promptly and thoroughly investigated, thereby absolving Defendant of any vicarious liability. Based on the foregoing reasons, summary judgment for Plaintiff must be denied.

## Defendant's Motion

*Hostile Work Environment*

Plaintiff attempts to distinguish four cases[6] relied upon by Defendant to no avail. Hostile work environment claims are "based on the cumulative effect of individual acts," the nature of which "involves repeated conduct." McCann, 526 F.3d at 1378 (quoting National R.R. Passenger Corp. v. Morgan, 526 U.S. 101, 114-116, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002)). In McCann, a black employee was called "girl" and the term "boy" was used in front of her once over a period of more than two years. Other racial slurs were used out of the black employee's hearing, such as "nigger" and "nigger bitch." In affirming the district court's grant of summary judgment for the employer, the Eleventh

---

[6] McCann v. Tillman, 526 F.3d 1370 (11th Cir. 2008); Harrington v. Disney Regional Entm't, Inc., 276 Fed.Appx. 863, 876-877 (11th Cir. 2007) (affirming district court's grant of summary judgment for employer on hostile work environment because "ghetto" was not so severe a racial slur, particularly when plaintiff used it); Austin v. City of Montgomery, 196 Fed.Appx. 747 (11th Cir. 2006) (holding that reduction in job duties was not based on race); Barrow v. Georgia Pacific Corp., 144 Fed. Appx. 54, 57 (11th Cir. 2005) (holding that the letters KKK appearing on bathroom wall and block-saw console, use of word "nigger" three times or more a year, and noose in employee's locker, while offensive, were not so severe or pervasive to alter conditions of employment).

-8-

Circuit held that "[a]lthough offensive, such instances of racially derogatory language alone, extending over a period of more than two years, are too sporadic and isolated to establish that the employer's conduct was so objectively severe or pervasive as to alter the terms and conditions of her employment." McCann, 526 F.3d at 1378-79.

While the racial slurs directed at Plaintiff by a co-worker in this case—"nigger"—are severe as opposed to the use of the term "girl" or "boy" in McCann, the number of times Plaintiff was called such from March 2002 until June 2006 does not tip the scale beyond what is considered "isolated" incidents. The most times, according to Plaintiff's testimony, that he was referred to in this manner was five or six times over the course of four years. This racial slur was never uttered in Plaintiff's presence, by his own admission.[7] Langille averred that Savage called Plaintiff "'nigger,' on more than one occasion."[8] In his deposition, Langille clarified the number of times as "probably two times, no more than three."[9] Rivera and Jankowski told Plaintiff that they had heard Savage use this racial epithet.[10] Jankowski told Plaintiff that he had heard Savage say that he was "going to try and get that nigger fired," referring to Plaintiff.[11] Adding up the times his fellow apprentice linemen, but not Plaintiff, heard Savage use this slur, amounts

---

[7] See Depo. of Brown at p. 91.

[8] See Affidavit of Langille at para. 6, attached to his deposition

[9] See Depo. of Langille at p. 29.

[10] See Depo. of Brown at pp. 91 & 94.

[11] See Depo. of Brown at pp. 77-78, 92-93.

to five—no more than three times by Langille, once by Rivera, and once by Jankowski. Five times in the span of four years does not rise to the level of frequency contemplated to constitute a hostile work environment.

Most importantly, Plaintiff never reported the remarks overheard by Jankowski because Plaintiff noted that Savage "didn't say it to me."[12] There is no indication in the record that Plaintiff reported any of the other times he heard that Savage had made racial epithets. When Plaintiff telephoned the ethics line to report and contest Savage's treatment of him on November 18, 2006, which resulted in a written reprimand and loss of one day's pay, he never reported any other incidents of harassment.[13]

The questions asked by a lineman, Hadfield, referring to Plaintiff's preference for eating chicken were made "a couple" of times, three at the most.[14] The reference to chicken is clearly not so severe as to necessarily constitute that contemplated for a successful claim of hostile work environment. Nevertheless, even including these comments having been made three times, the number of slurs for the four-year period totals eight, and only the comments about chicken were heard by Plaintiff himself. In any

---

[12] See Depo. of Brown at p. 78.

[13] See Depo. of Brown at p. 53. Plaintiff also admitted there was another time he had called the ethics line because he believed he had been wrongfully sent home by Gary Riley when he showed up two days late for work with an injured elbow. See Depo. of Brown at pp. 12, 138-139. He never complained about any other incidents of harassment when he made this call.

[14] See Depo. of Brown at pp. 69, 93-94.

event, the slurs were made by co-workers in that Savage, Montenare, and Hadfield are not supervisors or decision-makers.

Plaintiff's complaints that he was harassed based on his race because he was required to dig more holes and trenches, was denied equal time in a hydraulic bucket, and was refused the use of the newer white bucket trucks, do not elevate the situation to a hostile work environment. There is no evidence that any of the alleged harassment was based on race. Plaintiff admitted that although digging trenches was the apprentices' job, everyone, including Savage, Montenare, and Hadfield, dug trenches.[15] Plaintiff's seniority and added experience made it unnecessary for him to train in the hydraulic bucket as often as the less-experienced apprentice linemen. There was no company policy regarding assignment of green or white bucket trucks, and Poole tended to give the newer trucks to his good friends and "fishing buddies."[16] As noted earlier in this order, favoritism does not violate section 1981 because it is unrelated to membership in a protected class. See, e.g., Platner; Blanton. Moreover, sending Plaintiff home after he showed up for work two days late with an injured elbow seeking light duty, is not race-based.

Notably, the alleged harassment did not interfere with Plaintiff's job performance. Indeed, his promotion to lineman was unimpeded. Even assuming harassment existed, there is no evidence that Defendant should be held directly or vicariously liable to the

---

[15] See Depo. of Brown at pp. 100-101 & 115.

[16] See Depo. of Brown at pp. 47-48, 56, 58 & 60.

Plaintiff. No tangible employment action was taken against Plaintiff. See Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1276 (11th Cir. 2002). Defendant had an anti-harassment policy in place, and Plaintiff did not report the majority of the harassment.

Plaintiff makes much ado about how the other apprentice linemen and linemen told him that he was being treated unfairly because he was black. Co-workers' opinions, however, are generally irrelevant to establish discrimination or any racially-motivated intent on the part of the employer. See Matthews v. Euronet Worldwide, Inc., 271 Fed.Appx. 770, 770 (10th Cir. 2008) (holding in § 1981 employment termination case based on race discrimination, that co-workers' opinions on plaintiff's job performance have "no bearing" on supervisor's opinion of plaintiff's job performance and are therefore irrelevant; facts must be viewed as they appear to decision-maker).[17]

*Failure to Train*

As stated above, Plaintiff did not suffer an adverse employment action. On the contrary, he received satisfactory job performance evaluations throughout his

---

[17] See also Enderwood v. Sinclair Broad. Group, Inc., 233 Fed. Appx. 793 (10th Cir. 2007) (holding in an age discrimination case that co-worker's beliefs regarding nature of e-mail sent by plaintiff was irrelevant because only employer's beliefs regarding nature and content of e-mail matters in discrimination case); Johnson v. Interstate Brands Corp., 2008 WL 3823765, at *8 (W.D. Tenn. Aug. 12, 2008) (holding in age discrimination case that co-worker's opinion that management treats younger employees more favorably than older ones is irrelevant and not evidence of pretext, citing Mauter v. Hardy Corp., 825 F.2d 1554, 1558 (11th Cir. 1987)); Mauter, 825 F.2d at 1558 (holding in age discrimination case that statement made by a retired vice president for employer that the corporation was "going to weed out the old ones" was irrelevant because retired vice president played no role in decision to terminate and statement was not based on facts).

employment and was timely promoted to the position of lineman. Thus, his failure to receive the amount of bucket training he desired did not affect a term or condition of his employment in any way.

Neither can Plaintiff prove that he was treated differently from any similarly situated non-black employees. The three non-black apprentice linemen who received more time in the bucket were less experienced than he and therefore not similarly situated. Based on Plaintiff's failure to establish a prima facie case of failure to train, summary judgment must be granted in Defendant's favor.

It is therefore **ORDERED AND ADJUDGED** as follows:

(1)  Defendant's Motion for Summary Judgment (Dkt. 25) is **GRANTED**.

(2)  Plaintiff's Motion for Summary Judgment (Dkt. 29) is **DENIED.**

(3)  The Clerk is directed to enter judgment in favor of Defendant and against Plaintiff.

(4)  The Clerk is directed to close the file.

**DONE AND ORDERED** at Tampa, Florida, on January 28, 2009.

s/*Richard A. Lazzara*
**RICHARD A. LAZZARA**
**UNITED STATES DISTRICT JUDGE**

<u>**COPIES FURNISHED TO**</u>:
Counsel of Record